## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALEN DEAN O'BRYANT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. CIV-21-153-R |
| | ) | |
| SCOTT NUNN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

Petitioner, appearing through counsel, seeks a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. No. 1. Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) the matter was referred to United States Magistrate Judge Suzanne Mitchell for preliminary consideration. Judge Mitchell issued a Report and Recommendation in which she recommended the Petition be denied. Doc. No. 23. Petitioner has timely filed his objection [Doc. No. 24], and the matter is ripe for decision. On *de novo* review, for the reasons set forth below, the Court ADOPTS the Report and Recommendation to the extent it is consistent with this Order and DENIES the Petition.

### I. Background

Petitioner was convicted of four counts of child sexual abuse based on the testimony of the victim L.W. Having exhausted his claims before the Oklahoma Court of Criminal Appeals, Petitioner presents four grounds for relief to this Court: (1) ineffective assistance of trial counsel; (2) denial of due process as a result of improper bolstering of witnesses by other witnesses; (3) improper vouching for L.W.'s testimony by the prosecutor; and (4)

cumulative error. Doc. No. 1 at 5–10. Judge Mitchell recommends the Court deny the petition on all four grounds. Doc. No. 23 at 1. The Court will address Petitioner's grounds for relief in the same order as the Report and Recommendation.[1]

The Court's obligation in assessing Petitioner's objection to the Report and Recommendation is to conduct a *de novo* review of those portions of the Report and Recommendation to which Petitioner makes specific objection. The issues are considered in the context of the highly deferential standard of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) as discussed by Judge Mitchell. Petitioner, although represented by counsel, provides few citations to Supreme Court precedent, and does not address the standard of review, which requires that the Oklahoma Court of Criminal Appeals' application of federal law, as set forth by the Supreme Court, be unreasonable.[2] *Owens v. Trammel*, 792 F.3d 1234, 1242 (10th Cir. 2015).

## II. Ground Two

In Ground Two Petitioner argues that the trial court improperly allowed certain testimony by pediatrician Dr. Stockett, DHS employee Abby Walden, forensic investigator Kara Marts,[3] and the victim's mother, Beth Miller. He contends the objectionable

---

[1] The decision of the Magistrate Judge to address Grounds Two and Three before addressing the ineffective assistance of trial counsel claim presents the issues in the most logical sequence considering Petitioner's contention that trial counsel was ineffective in part for failing to object to the issues addressed by Grounds Two and Three of the Petition.

[2] Alternatively, a petitioner may prevail by establishing that the Oklahoma Court of Criminal Appeals' decision was contrary to Supreme Court precedent, that is, the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted). Mr. O'Bryant relies on the "contrary to" standard in a single argument, addressed in footnote 1 of his Objection that the decision of the Oklahoma Court of Criminal Appeals was "contrary" to *Hicks v. Oklahoma*, an issue discussed below.

[3] At the time Ms. Marts interviewed LW., Marts was employed at the Care Center, a child advocacy center that provides non-acute medical exams, victim advocacy and conducts forensic interviews. Tr. Vol. III at 815.

testimony served to improperly bolster the victim's credibility, which deprived him of fair trial in violation of his due process rights. The Court will consider Petitioner's argument as to each witness separately, and then in total, paying close attention to the deferential standard of the AEDPA.[4]

Regarding the State's expert, Dr. Stockett, on direct appeal the Oklahoma Court of Criminal Appeals concluded that "the expert testimony incidentally corroborated the other testimony, but it did not tell the jurors which result to reach." Doc. No. 17-5 at 6. Judge Mitchell concluded that the testimony to which Petitioner objects did not deprive him of a fair trial. Her conclusion was premised in part on the fact that Dr. Stockett did not opine that Petitioner had abused L.W. Doc. No. 23 at 15–16.[5] Petitioner disagrees with Judge Mitchell's conclusion, arguing:

> First, the magistrate makes the claim that although Dr. Stockett testified that she relied on the statements of L.W., "she did not opine that Petitioner had committed the sexual abuse." Report and Recommendation at 15-16. Petitioner asserts that this is a dubious mode of analysis.
>
> *Petitioner* was on trial, was in fact the only defendant on trial in this case, accused of sexual abuse against L.W.—whom Dr. Stockett claims to believe. The magistrate makes it appear that there might be a third-party perpetrator,

---

[4] The Oklahoma Court of Criminal Appeals' conclusion that certain witnesses did not vouch for L.W.'s credibility is a factual finding and, as set forth above, Petitioner does not argue that any factual finding by the Oklahoma Court of Criminal Appeals was unreasonable in light of the evidence. *See Nelson v. Williams*, 2021 WL 7161830, * 23 (D. Colo. Dec. 14, 2021); *Warner v. Workman*, 814 F.Supp.2d 1188, 1209 (W.D. Okla. 2011).

[5] Petitioner also challenges the underlying basis for Dr. Stockett's testimony, arguing that she could not proffer a proper opinion of L.W.'s veracity because she never watched the recording of the forensic interview. Doc. No. 24 at 8 and 11-12. However, this objection ignores the fact that Dr. Stockett informed the trial court in her direct testimony that as part of her process of examining a potential victim of child sexual abuse, such as L.W., the expert talks to "people who know things about the case" including "learn[ing] about the forensic interview from [the] DHS worker." Tr. Vol. III at 632. Dr. Stockett further informed the trial court that she must do this background work "because that is part of how the decision is made about what the diagnosis is." *Id*. at 633. The Court is satisfied that Dr. Stockett had enough information about the forensic interview and the background of the case to have an opinion as to whether L.W.'s story has been consistent. Accordingly, the undersigned will focus on whether her opinion improperly made a factual determination that is correctly reserved for the jury.

that Dr. Stockett may have believed that L.W. had been abused but that Petitioner is not the one who did it.

With respect to the magistrate, this observation is nonsensical under the circumstances of the trial. No third-party was charged. No party or evidence suggested a third-party perpetrator, and the testimony of Dr. Stockett was clearly vouching for [the] truth of the specific allegations of L.W. made against Petitioner, not some unknown, un-named third-party.

Doc. No. 24 at 10–11 (emphasis in the original).

To prevail on his claim, Petitioner must establish that the complained about testimony rendered his trial fundamentally unfair. Dr. Stockett testified:

Q:   Have you ever had a child come in and it was later proven that the child was lying?
A:   Yes.
Q:   Okay. And I assume you've had cases where it's proven that the child is not lying?
A:   Yes, the majority of the cases in fact.

***

Q.   Are you the one who makes that determination of whether a child is lying or not?
A.   Well, I determine whether what they tell me is consistent with what they have previously reported. And I make my own judgment of whether what they're saying is reliable.

Tr. Vol. III at 634. She testified that the absence of physical signs of abuse did not mean that L.W. was lying and that due to the consistency between the history reported by L.W. to the forensic interviewer and the information conveyed directly by L.W., she believed L.W. had been sexually abused. Tr. Vol. III at 640, 642-43.

"Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . ." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly v. DeChristophoro*, 416 U.S. 637, 643

(1974)). "Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002)(quotation marks and citation omitted).

First, the Court addresses Petitioner's characterization of Judge Mitchell's conclusion as "nonsensical" because she characterized the testimony as not implicating Petitioner. The Tenth Circuit considered similar expert testimony in *Parker v. Scott,* 394 F.3d 1302 (10th Cir. 2005). Considering the similarities, the Court quotes from the opinion at length:

> Dr. Inhoffe, who had interviewed and physically examined the child after the incidents, testified as an expert in child abuse. Parker objects to Dr. Inhoffe's opinion testimony during three parts of the trial where she concluded that the child's excessive sexual knowledge was "consistent with" that of a victim who had been sexually abused. Near the close of her direct examination, Dr. Inhoffe testified as follows:
>
> > Q:  From what you reviewed, was [the child] consistent in what she was saying?
> > A:     Yes.
> > Q:  And after the detailed history that she had given you and that you had conducted, do you feel as though you are able to give your opinion as to whether or not she was sexually abused?
> > A:     Yes.
> > Q:  Would you please tell the ladies and gentlemen of this jury what your expert opinion is as to whether or not [the child] was sexually abused?
> > A:  I believe that her information throughout the entire evaluation was consistent with a child who had been sexually abused.
>
> App. at 411. Next, after a lengthy cross-examination that challenged the credibility of Dr. Inhoffe's direct testimony, on redirect examination the prosecution asked Dr. Inhoffe, "And is your opinion today that sexual abuse

took place?" She responded "Yes." *Id.* at 428. Finally, Parker called Dr. Inhoffe as an adverse witness in the defense's case in chief. During cross-examination by the prosecution, she responded "Yes, it is" to the prosecution's question, "And is it still your opinion that [the child] was the victim of sexual abuse of a minor child?" *Id.* at 553.

Whether Dr. Inhoffe's testimony amounted to impermissible vouching is a close call. Nevertheless, viewed in its entirety, we cannot conclude that her testimony violated the general due process standard outlined in Supreme Court precedent. Dr. Inhoffe's testimony centered around her medical examination of the child and statements made by the child showing precocious familiarity with the sexual function. It was Dr. Inhoffe's opinion, taken in context, that the child's statements of excessive sexual knowledge were consistent with abuse. **The expert did not opine or testify that Parker committed sexual abuse.**

*Parker*, 394 F.3d 1302, 1311–12 (10th Cir. 2005) (footnote omitted and emphasis added).

Here, similarly, Dr. Stockett did not opine that Petitioner committed sexual abuse. Judge Mitchell's analysis is in accordance with Tenth Circuit authority.

Even assuming that Dr. Stockett's testimony was vouching, when considered in the context of the entire trial, her testimony did not render the trial fundamentally unfair.[6] Cross examination of Dr. Stockett was directed to the defense theory that the absence of physical findings was because L.W.  had not been sexually abused. In addition, L.W. testified, was subject to thorough cross-examination and the jury had ample opportunity to consider her credibility. Furthermore, the prosecutor's closing argument made no effort to rely on Dr. Stockett's opinion to support L.W.'s credibility.

[W]e did not call Dr. Mary Stockett to come in here and say that Alen O'Bryant committed those crimes against [victim]. That wasn't her purpose. Her purpose was because . . . in a case like this you'd expect [physical

---

[6]  Petitioner complains that Dr. Stockett was permitted to testify that L.W.'s statements during her exam were consistent with L.W.'s statements to the forensic interviewer, despite Dr. Stockett not having viewed the forensic examination. Petitioner, however, points to no inconsistencies between the two, and further, the forensic interview was introduced as evidence and the jury could consider any inconsistencies.

> evidence of abuse]. And guess what? That doesn't match up with what her experience is. And this is what she does for a living. And this is what she's researched . . . That's the reason that we called her. Not to say Alen O'Bryant did this . . . .

Tr. Vol. IV at 975–76. The argument reminded the jury of its role as factfinder and was consistent with the Court's instructions to the jury that it alone was to decide issues of fact. Tr. Vol. II at 402–04 and Crim. App. Record at 115–121, 124, 126–127.

> The Supreme Court has held that:

> [i]n order for a state court's decision to be an unreasonable application of [Supreme Court] case law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. ___, ___, 135 S. Ct. 1372, 1376 (per curiam) (internal quotation marks omitted). In other words, a litigant must "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Ibid.* (internal quotation marks omitted). This is "meant to be" a difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

*Virginia v. LeBlanc*, ___ U.S. ___, 137 S. Ct. 1726, 1728 (2017). Petitioner has failed to meet this substantial burden, in that he cannot establish that the introduction of the above testimony by Dr. Stockett rendered his trial fundamentally unfair, or that the Oklahoma Court of Criminal Appeals' decision was an unreasonable application of federal law. The Court, accordingly, finds no basis for habeas relief in Dr. Stockett's testimony.

As to the allegedly bolstering testimony of lay witnesses, Petitioner contends Judge Mitchell improperly relied on the invited error doctrine. Doc. No. 24 at 12. He argues that because Respondent never raised this argument, it should be considered waived. *Id.* Additionally, he disputes that the allegedly vouching statements were actually invited error, "[t]here was no invited error because defense counsel did not elicit vouching statements.

The statements were volunteered by the witnesses." Doc. No. 24 at 12. Without regard to the invited error doctrine, the Court concludes that Petitioner has failed to establish that the Oklahoma Court of Criminal Appeals' decision was an unreasonable application of the standard set forth by the court in *Lisenba v. California*, 314 U.S. 219, 236 (1941).

Petitioner complains that Kara Marts, who conducted the forensic interview, told the jury what conclusion to draw by testifying that the acts described are not typical for a nine-old to discuss unless they were part of her personal experience. Tr. Vol. IV at 834. Defense counsel inquired whether there was a scientific way for anyone to know whether L.W. was telling the truth. *Id.* p. 835. Ms. Marts responded that it was not her job to determine whether L.W. was telling the truth. *Id.* p. 836. Defense counsel pressed further, "My question is, ma'am, and I'm not asking you what your belief is, but isn't it true that you – yes or no, please, that you do have a belief about whether she's telling the truth." *Id.* She responded that she had a belief but did not identify the belief.

With regard to Abby Walden, an employee of DHS, Petitioner complains that she testified that she had no concern about L.W. lying and that L.W. never faltered in what she alleged about sexual abuse. The second part of this complaint is merely a statement of fact, not of opinion. If L.W.'s statements to Walden were consistent, the testimony merely informed the jury that L.W.'s statements had not changed.

Finally, Petitioner complains about the testimony of L.W.'s mother, Beth Miller, who admitted on cross-examination that she did not believe L.W. until she watched the

recording of the forensic interview.[7] Tr. Vol. III at 728.

The Court finds that none of this testimony, considered individually or collectively, rendered Petitioner's trial fundamentally unfair. L.W. appeared and was subjected to cross-examination on her allegations. The cross-examination of Abby Walden and Ms. Miller was designed to support Petitioner's theory that L.W.—for whatever reason—fabricated the allegations against him and that potentially she had been exposed through a sexually explicit book left lying around the home or by school children on the bus. Considering the trial in totality, the Court finds that the testimony about which Petitioner complains did not undermine its fundamental fairness, and, accordingly, the Oklahoma Court of Criminal Appeals' decision was not an unreasonable application of Supreme Court precedent.[8] The

---

[7] Defense counsel argued that Ms. Miller only stated that she believed L.W. when it became apparent that her children would not be returned to her custody if she did not do so.

[8] Judge Mitchell concluded that Petitioner could not rely on a case cited for the first time in his Reply brief to support his habeas petition, a conclusion to which Petitioner objects. Although the Court concurs with Judge Mitchell and concludes she did not err in declining to address Petitioner's citation to *Hicks v. Oklahoma*, 447 U.S. 343 (1980), the Court finds the citation does not aid Petitioner's case. The Tenth Circuit Court of Appeals does not construe *Hicks* as broadly as Petitioner argues, and thus the decision of the Oklahoma Court of Criminal Appeals was not "contrary to" clearly established federal law. Doc. No. 24 at 10, n. 1. As noted by the court in *Mitchell v. Sharp*, 798 F. App'x 183 (10th Cir. 2019), (cont.)

> (cont.)  Even if we proceed to the merits, the *Hicks* claim fails because Mr. Mitchell cannot show that *Hicks* supplies clearly established Supreme Court law. *See House*, 527 F.3d at 1018 ("The absence of clearly established federal law is dispositive . . . ."). *Hicks* is not "closely-related or similar to the case *sub judice*." *Id.* at 1016. In *Hicks*, an Oklahoma trial court instructed the jury to sentence the defendant under Oklahoma's habitual offender statute, which was later held unconstitutional. *See Hicks*, 447 U.S. at 344–45. The Supreme Court found this prejudiced the defendant and violated his due process rights. *Id.* at 346. *Hicks* thus decided that when a state law provides for a jury to impose a sentence, a defendant has a due process right for the jury to be instructed under a constitutional standard. Mr. Mitchell, by contrast, alleges a due process right to have the same jury decide both guilt and punishment in a capital case. He does not contend his resentencing jury was instructed to apply an unconstitutional sentencing statute.

*Id.* at 197. As noted by the Supreme Court in *Carey v. Musladin*, 549 U.S. 70 (2006), "Supreme Court holdings—the exclusive touchstone for clearly established federal law—must be construed narrowly and consist only of something akin to on-point holdings*." House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). Here Petitioner cites *Hicks* for the broad proposition that he is entitled to have the state court follow its own procedures, specifically regarding the admissibility of evidence, and the Court declines his invitation to extend *Hicks* to the circumstances of his case.

Court consequently denies § 2254 relief on Ground Two of the Petition.[9]

### III. Ground Three: Prosecutorial Misconduct

In Ground Three Petitioner asserts that prosecutorial misconduct during closing argument—specifically vouching for witness Beth Miller and calling Petitioner a liar—violated his due process rights. Judge Mitchell recommended denial of this ground, concluding that the Oklahoma Court of Criminal Appeals' plain error analysis was not an unreasonable application of federal law. Doc. No. 23 at 21. Petitioner disagrees, arguing:

> In Petitioner's view, the record shows that, after the jury heard witness after State witness explain why L.W. was telling the truth, including a medical expert, the prosecutor told the jury during closing argument that Beth Miller was either lying or telling the truth about believing L.W., and disbelieving O'Bryant's denial, and stating that Miller was in fact telling the truth when she finally decided to believe the version of events told by L.W. Tr. 980-82.
>
> In addition, the prosecutor stated that O'Bryant lied and had reason to lie-and he did not even testify.

Doc. No. 24 at 14.[10]

During closing, defense counsel argued that DHS coerced Ms. Miller by threatening that she would not regain custody of her children if she would not state that she believed L.W.[11] Tr. Vol. IV at 958–59. In rebuttal, the prosecution argued that either Beth

---

[9] With regard to Ground II, the Objection mixes Petitioner's arguments regarding the prosecutor's closing argument presented in Ground III with the claims regarding witness testimony presented in Ground II. The Court will consider those issues in Ground III, however, all contentions of error have been considered in assessing whether the Oklahoma Court of Criminal Appeals' decision was unreasonable in light of Supreme Court precedent.

[10] Casey Reser, former detective with the Oklahoma County Sheriff's Department, testified that during the investigation Mr. O'Bryant said "it would not be possible for him to have sex because he's impotent." Tr. Vol. III at 784. Beth Miller testified that he took testosterone shots during the relevant time period and they had a healthy sex life. Tr. Vol. III at 699–700. In light of the contradictory evidence, during closing the prosecution referred to Petitioner as a liar, providing one of the underpinnings for Petitioner's prosecutorial misconduct claim.

[11] "You can keep your husband, the man you married because you loved him, but you'll – but you can't have your children back. We're gonna keep your babies from you until you change your tune." Tr. Vol. IV at 958.

(O'Bryant) Miller told the truth on the stand when she testified that she only started to

believe L.W. after viewing the forensic interview or she lied. Tr. Vol. IV at 981.

> The other option is that she lied. That she did exactly what defense counsel
> says. That she made the decision at one point that, you know what, I'm not
> getting my kids back otherwise, I love my kids more than him, screw him.
> But to believe this, ladies and gentlemen, you've got to make a pretty far
> stretch there. Because first you have to believe that Beth O'Bryant's one of
> the most evil people that have ever lived, because it's not just divorcing him.
> She's gone further than that. She's taken this stand and actually become a
> witness for us, against him, trying to send him to prison. That's more than
> she has to do to get those kids back. She's gone above and beyond. And that,
> if she is lying and knows he's innocent, is evil.

*Id.* "[I]t is not improper for a prosecutor to direct the jury's attention to evidence that tends

to enhance or diminish a witness's credibility." *Thornburg v. Mullin*, 422 F.3d 1113, 1132

(10th Cir. 2005). Furthermore, there was no argument from which the jury could reasonably

believe that the prosecutor is indicating a personal belief in Beth Miller's credibility. The

prosecutor did not offer personal opinion or assurances that Beth Miller was telling the

truth or that he knew something more about her credibility than what could be deduced

from the evidence. Rather, he argued that the defense theory made no sense. The Court has

reviewed the portions of the closing cited by Petitioner in his objection and finds no basis

therein for concluding that the Oklahoma Court of Criminal Appeals' decision was

contrary to or an unreasonable application of federal law.

Furthermore, the trial court instructed the jury at the beginning of trial and again

before closing that the jurors alone were to determine the credibility of witnesses, and that

the arguments made by counsel were not evidence. Tr. Vol. II at 402–04; Crim. App.

Record at 115–121, 124, 126–127. Finally, the closing argument must be considered in

context, *Darden v. Wainwright*, 477 U.S. 168, 179 (1986), and in the context of this case there is no basis for concluding that the Oklahoma Court of Criminal Appeals' due process analysis was unreasonable where the Court cannot say that the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

Petitioner also complains about the State's closing argument wherein the prosecutor argued that Mr. O'Bryant lied to police about being impotent and queried why he felt the need to do so. Tr. Vol. IV at 986. Again, the scope of habeas review under § 2254 is narrow, and the argument is not so inappropriate as to render the trial unfair. In a case involving a non-testifying defendant whose out-of-court statements were characterized as lies, the Tenth Circuit stated:

> We have not, however, established that referring to testimony as a lie constitutes per se prosecutorial misconduct . . . [W]e find the argument here was merely a commentary on the veracity of defendant's story. The conflicting testimony on key aspects of the case required the jury to make determinations of witness credibility and truthfulness. The prosecutor's argument fit within the bounds of this context.

*United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999) (citations omitted). The Court concurs with Judge Mitchell that the Oklahoma Court of Criminal Appeals' decision on Petitioner's prosecutorial misconduct claim was not an unreasonable application of federal law and Ground Three is hereby DENIED.

## IV. Ground One: Ineffective Assistance of Trial Counsel

In Ground One Petitioner alleges a number of instances of ineffective assistance of counsel, each of which will be set forth below. On direct appeal the Oklahoma Court of

Criminal Appeals found that trial counsel's actions "did not fall below reasonable standards of professional conduct" and further that Petitioner had "not shown that the strategy chosen by trial counsel was deficient." *O'Bryant v. State,* Summary Opinion, Doc. No. 17-5, p. 4. The Oklahoma Court of Criminal Appeals further concluded that any objection trial counsel might have made to the complained of evidence would have been properly overruled. In construing Petitioner's claims Judge Mitchell concluded that the Oklahoma Court of Criminal Appeals' application of *Strickland v. Washington*, 466 U.S. 668 (1984), was not unreasonable and therefore she recommended that relief be denied on Ground One.

*Strickland* establishes a difficult bar for a habeas petitioner.[12] Furthermore, establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is more difficult.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011)(internal citations and quotation marks omitted). Because the Oklahoma Court of Criminal Appeals applied *Strickland* [Doc. No. 17-5 at 3], the Court's only task is to determine whether it did so reasonably.

---

[12] To prevail on his claim of ineffective assistance of counsel, the defendant must prove deficient performance and prejudice. *Strickland*, 466 U.S. at 687. To prove deficiency, the defendant must overcome the strong presumption that counsel's conduct fell within the wide range of professional conduct, including trial strategy. *Id.* at 689. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Petitioner first argues that counsel failed to take a sworn statement from Ms. Miller—L.W.'s mother and O'Bryant's ex-wife—that could have been used to impeach her testimony. He argues that once DHS told Ms. Miller to divorce Petitioner so she could potentially regain custody of her children, she "flipped" her story. A sworn statement would have protected him at trial from her changing position. In a related contention Petitioner argues that counsel failed to use certain text messages he exchanged with Ms. Miller and photos of the two of them taken after she viewed the forensic interview and allegedly began to believe her daughter's accusations. *See* Tr. Vol. III at 698–99. Petitioner argues her testimony was false, because she continued her relationship with Mr. O'Bryant for months thereafter, even after filing for divorce. Petitioner contends counsel should have confronted Ms. Miller about this inconsistency with extrinsic evidence. He argues that cross-examination of Beth Miller without the introduction of the evidence of her motive to change her story—representations by DHS that she could regain custody of her children by divorcing him—was constitutionally deficient performance. *Id*. at 3–4.

In concluding that Petitioner had failed to establish he is entitled to habeas relief, Judge Mitchell reasons that defense counsel was not constitutionally ineffective for failing to introduce external evidence, because Ms. Miller, while testifying, admitted her prior inconsistent statements. *See Neal v. State,* 837 P.2d 919, 920–21 (Okla. Crim. App. 1992)(quoting *State v. McBlair*, 670 P.2d 606, 608 (Okla. Crim. App. 1983)) ("If the witness admits to making the prior inconsistent statement, it is not necessary to introduce the portion of the transcript related to the inconsistent statement.").

Decisions based on trial strategy rise to the level of ineffective assistance of counsel only if they are "completely unreasonable, not merely wrong, so that they bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation marks, citation, and brackets omitted). Here, in light of Miller's admissions during her testimony, the Court finds Petitioner's trial attorney's choice not to introduce extrinsic evidence of her prior beliefs and her behavior toward Petitioner after viewing the forensic interview was a reasonable tactical decision. *See Maher v. Allbaugh*, No. CIV-15-27-C, 2017 WL 6349174, at *17–*18 (W.D. Okla. Dec. 12, 2017) (holding that trial court's refusal to admit a handwritten statement inconsistent with a witness's testimony did not prevent effective cross-examination, and therefore did not deny a petitioner a fundamentally fair trial). Accordingly, the decision of the Oklahoma Court of Criminal Appeals was not an unreasonable application of *Strickland*, and the Court denies habeas relief on Mr. O'Bryant's ineffective assistance of counsel claims as they relate to Beth Miller.

Petitioner next argues that counsel was ineffective in failing to object to the introduction of L.W.'s forensic interview as cumulative. As noted above, the Oklahoma Court of Criminal Appeals ruled that any objections would have been properly overruled.[13] Judge Mitchell concluded that Petitioner failed to establish deficient performance under *Strickland* for that same reason, that is, counsel is not ineffective for failing to raise an issue

---

[13] Petitioner's counsel apparently believed he had a standing objection to the videotape and therefore did not specifically object thereto. In addressing Petitioner's contention that introduction of the video was cumulative, the Oklahoma Court of Criminal Appeals concluded the recording was probative and that the probative value was not substantially outweighed by the needless presentation of cumulative evidence and thus there was no plain error. Doc. No. 17-5 at p. 8.

that lacks merit. In analyzing this issue, Judge Mitchell addressed certain state law cases, and Petitioner contends that her analysis of *Jones v. State*, 781 P.2d 326 (Okla. Crim. App. 1989), provides a "speculative legal conclusion."  Doc. No. 24 at 4.

The Court need not delve into Judge Mitchell's analysis of *Jones*. As noted by the Supreme Court in *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991), "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Accordingly, the Oklahoma Court of Criminal Appeals' conclusion that any objection would have been overruled on state law grounds is not subject to reconsideration, and defense counsel's failure to object did not prejudice Petitioner. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that counsel was not ineffective for failing to assert a meritless argument at trial); *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) ("if the issue is meritless, its omission [by appellate counsel] will not constitute deficient performance.")(quotation marks and citation omitted). Therefore, the Oklahoma Court of Criminal Appeals' application of *Strickland* in this context was not unreasonable.

As to counsel's failure to object to Dr. Stockett's testimony, the Report and Recommendation notes the Oklahoma Court of Criminal Appeals' conclusion that Dr. Stockett's testimony did not deprive Petitioner of a fair trial, and Judge Mitchell concludes that trial counsel's failure to object cannot support an ineffective assistance of counsel claim. *See Willingham v. Mullin*, 296 F.3d 917, 934 n.6 (10th Cir. 2002) (noting that where substantive claims have been rejected on the merits, "separate consideration of the

16

associated ineffective assistance claims is unnecessary"). Consequently, Petitioner cannot prevail on this portion of his ineffective assistance of counsel argument.[14]

Petitioner's final argument that his counsel was constitutionally ineffective stems from his attorney's failure to properly inform him of his right to testify and the benefits and detriments of doing so.[15] Doc. No. 24 at 5–7. Mr. O'Bryant argues that had he known the benefits of testifying in his case, he likely would have done so. *Id*. He further contends that his testimony had a reasonable probability of changing the outcome of his case, and thus his attorney's failure to inform him of the benefits of testifying warrants relief under the *Strickland* standard. *Id*.

On direct appeal the Oklahoma Court of Criminal Appeals found that Petitioner's attorney was not ineffective in this regard. Judge Mitchell concluded that the Oklahoma Court of Criminal Appeals' conclusion was not an unreasonable application of federal law because Petitioner informed the trial court that he understood his right to testify, and that he was waiving that right. Doc. No. 23 at 37–38.

"To establish an ineffectiveness claim predicated on violation of the right to testify," Mr. O'Bryant "must show that he did not know that he had a right to testify and would have wanted to, or that he requested to testify, and that counsel refused his request."

---

[14] Petitioner argues that Judge Mitchell's reasoning is difficult to reconcile with the holding of *Lawrence v. State*, 796 P.2d 1176, 1177 (Okla. Crim. App. 1990), wherein the court held that an expert who testified definitively that small children do not lie about sexual abuse improperly took on the role of factfinder. *Id*. at 1176–78. The Court need not delve into Petitioner's reliance on this state court case in light of the Oklahoma Court of Criminal Appeals' conclusion that any objection would have been overruled.

[15] Petitioner provided the Oklahoma Court of Criminal Appeals with an affidavit from his trial attorney in which the attorney admitted he did not properly discuss the benefits and detriments of testifying, stating a defendant not testifying is his default position. Doc. No. 23 at 37. The attorney additionally stated that he had no strategic reason for sticking to this default position in Mr. O'Bryant's case. *Id*.

*Epperson v. Mullin*, 351 F. App'x 311, 320 (10th Cir. 2009) (citations omitted). Here, Petitioner cannot demonstrate that he did not know he had a right to testify. The trial judge discussed in depth Mr. O'Bryant's right to testify at trial, and Petitioner chose to waive that right. Tr. Vol. IV at 916–17. The court engaged in the following colloquy with Petitioner:

> Trial Court: Mr. O'Bryant, I know that you've had the opportunity to talk with your lawyers about this case, about the trial strategy in the case. So I recognize that sometimes things change when you start a case. By the time we get to the end of the case[,] strategy may change, opinion may change. But when your attorney told me that—that they had been informed by you after discussion that you did not wish to testify in this case, is that true?
>
> Petitioner: Yes, sir.
>
> Trial court: Now you understand you have a complete Constitutional right to testify in this case? You understand that?
>
> Petitioner: Yes, sir.
>
> Trial Court: As well, you have a complete constitutional right to not testify in this case, you realize that?
>
> Petitioner: Yes, sir.
>
> Trial Court: The Court proposes an instruction that if you don't testify[,] I will instruct the jury that they're not to basically consider that in any way in their determination in this case. Do you understand that?
>
> Petitioner: Yes, sir.
>
> Trial court: So are you telling me that it is your desire at this time that you would not be testifying in this case?
>
> Petitioner: Yes, sir.

*Id.*

Based on this waiver, Mr. O'Bryant cannot demonstrate that he was unaware of his right to testify. He affirmed to the trial court that he had been fully advised by his counsel

and was making the choice not to testify on his own behalf. Petitioner additionally cannot point to any specific facts demonstrating that his attorney stopped him from exercising that right. *See United States v. Meacham*, 567 F.3d 1184, 1188 (10th Cir. 2009) (holding a defendant who does not point to specific facts demonstrating that he did not know his right to testify and that his attorney took specific steps to stop any such testimony is not entitled to a new trial). Consequently, O'Bryant has failed to demonstrate that the Oklahoma Court of Criminal Appeals' determination that trial counsel was not constitutionally ineffective was an unreasonable application of *Strickland.*

Having considered each of Petitioner's allegations of ineffective assistance of counsel and concluded that the Oklahoma Court of Criminal Appeals' application of *Strickland* was not unreasonable, Ground One of the Petition is DENIED.

### V. Ground Four: Cumulative Error

Finally, Petitioner objects to Judge Mitchell's recommendation that the Court deny habeas relief on Ground Four, wherein he asserts that his conviction should be vacated due to cumulative error. On direct appeal the Oklahoma Court of Criminal Appeals concluded that there were no individual errors to accumulate in support of his claim. Doc. No. 23 at 41. Judge Mitchell concluded that the Oklahoma Court of Criminal Appeals' finding that there were no errors, and therefore no accumulated errors, was not contrary to or in violation of federal law. [16]

---

[16] In her Report and Recommendation, Judge Mitchell questioned whether cumulative error is a cognizable basis for for habeas relief. Doc. No. 23 at 42. Petitioner attacks the query, asserting that the statement "is somewhat alarming because the magistrate appears to not acknowledge, or be oblivious to, binding Tenth Circuit precedent on this legal question-a fact acknowledged by the Tenth Circuit in *Bush*, which recognized, in the very footnote cited by the magistrate, that circuit precedent holds that the Supreme Court has recognized cumulative error." Doc. No. 24 at 16.

The Tenth Circuit has held that "when a habeas petitioner raises a cumulative error argument under due process principles the argument is reviewable because Supreme Court authority clearly establishes the right to a fair trial and due process." *Bush v. Carpenter*, 926 F.3d 644, 686 (10th Cir. 2019) (internal quotation marks omitted). To be entitled to cumulative-error review, however, Petitioner must establish "two or more actual errors"; cumulative error review "does not apply . . . to the cumulative effect of non-errors." *Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 915 (10th Cir. 2019) (internal quotation marks omitted). Because Petitioner has not established the existence of two or more constitutional errors, the Court cannot conclude that the Oklahoma Court of Criminal Appeals' rejection of the claim was contrary to or an unreasonable application of clearly established federal law. Accordingly, the Petition is denied as to Ground Four.

## VI. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires "[t]he district court [to] . . . issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A court may issue a certificate of appealability only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court rejects the merits of petitioner's constitutional claims, he must make this showing by "demonstrat[ing] that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S.

---

The Court need not address the issue, however, because the Report and Recommendation addresses the issue on the merits and the Court does the same.

473, 484 (2000). For the reasons discussed above, Petitioner has not made the requisite showing on any of his claims. The Court therefore denies a certificate of appealability.

**VII. Conclusion**

For the reasons set forth above, the Court ADOPTS the Report and Recommendation [Doc. No. 23] to the extent it is consistent with this Order. The Court DENIES Mr. O'Bryant's Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [Doc. No. 1] and declines to issue a certificate of appealability.

**IT IS SO ORDERED** this 20th day of May 2022.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE